**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEO SHUMACHER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> XILINX, INC., DENNIS SEGERS, VICTOR ) <br> PENG, RAMAN CHITKARA, SAAR ) <br> GILLAI, RONALD S. JANKOV, MARY ) <br> LOUISE KRAKAUER, THOMAS H. LEE, ) <br> JON A. OLSON, ELIZABETH ) <br> VANDERSLICE, ADVANCED MICRO ) <br> DEVICES, INC., and THRONES MERGER ) <br> SUB, INC., ) <br> ) <br> Defendants. ) | Case No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 27, 2020 (the "Proposed Transaction"), pursuant to which Xilinx, Inc. ("Xilinx" or the "Company") will be acquired by Advanced Micro Devices, Inc. ("Parent") and Thrones Merger Sub, Inc. ("Merger Sub," and together with Parent, "AMD").

2. On October 26, 2020, Xilinx's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with AMD. Pursuant to the terms of the Merger Agreement, Xilinx's stockholders will receive 1.7234 shares of Parent common stock for each share of Xilinx common stock they

own.

3. On December 4, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Xilinx common stock.

9. Defendant Xilinx is a Delaware corporation and a party to the Merger Agreement. Xilinx's common stock is traded on the NASDAQ, which is headquartered in New York, New

York, under the ticker symbol "XLNX."

10. Defendant Dennis Segers is Chairman of the Board of the Company.

11. Defendant Victor Peng ("Peng") is Chief Executive Officer, President, and a director of the Company. Peng also previously served as Corporate Vice President, Graphics Products Group of Parent.

12. Defendant Raman Chitkara is a director of the Company.

13. Defendant Saar Gillai is a director of the Company.

14. Defendant Ronald S. Jankov is a director of the Company.

15. Defendant Mary Louise Krakauer is a director of the Company.

16. Defendant Thomas H. Lee is a director of the Company.

17. Defendant Jon A. Olson is a director of the Company.

18. Defendant Elizabeth Vanderslice is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

22. Xilinx develops highly flexible and adaptive processing platforms that enable rapid innovation across a variety of technologies, from the cloud to the edge and to the endpoint.

23. The Company is the inventor of the FPGA and Adaptive SoCs, designed to deliver the most dynamic processor technology in the industry

24. On October 26, 2020, Xilinx's Board caused the Company to enter into the Merger Agreement with AMD.

25. Pursuant to the terms of the Merger Agreement, Xilinx's stockholders will receive 1.7234 shares of Parent common stock for each share of Xilinx common stock they own.

26. According to the press release announcing the Proposed Transaction:

AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion. The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth. . . .

Additional Transaction Details

Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction. Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock[2]. Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors. The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions. The transaction is currently expected to close by the end of calendar year 2021. Until close, the parties remain separate, independent companies.

Management and Board of Directors

Dr. Lisa Su will lead the combined company as CEO. Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the transaction. In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

Advisors

Credit Suisse and DBO Partners are acting as financial advisors to AMD and Latham & Watkins, LLC is serving as its legal advisor. Morgan Stanley is acting as lead financial advisor to Xilinx. BofA Securities is also acting as a financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

27. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

28. As set forth below, the Registration Statement omits material information.

29. First, the Registration Statement omits material information regarding the Company's and AMD's financial projections.

30. With respect to the Xilinx Financial Projections, the Registration Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA, Adjusted EPS, and Unlevered Free Cash Flow; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the financial projections through year 2032.

31. With respect to the Xilinx Adjusted AMD Projections, the Registration Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA unburdened by SBC, Adjusted EBITDA burdened by SBC, Adjusted EPS unburdened by SBC, and Unlevered Free Cash Flow; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the financial projections through year 2032.

32. With respect to the AMD Projections, the Registration Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA, Adjusted EPS, and Unlevered Free Cash Flow; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the financial projections through year 2032.

33. With respect to the AMD Adjusted Xilinx Projections, the Registration Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA unburdened by SBC, Adjusted EBITDA burdened by SBC, Adjusted EPS unburdened by SBC, Adjusted EPS burdened by SBC, and Unlevered Free Cash Flow; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the financial projections through year 2032.

34. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

35. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors, Morgan Stanley & Co. LLC ("MS") and BofA Securities ("BofA").

36. With respect to MS's Relative Discounted Equity Value Analysis the Registration Statement fails to disclose: (i) the Xilinx and AMD Street Case projections used in the analysis; (ii) MS's basis for applying ranges of P/E multiples of 30.0x to 50.0x and 24.0x to 36.0x; and (iii) the individual inputs and assumptions underlying the discount rates of 9.3% and 6.8%.

37. With respect to MS's Relative Public Trading Multiples Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

38. With respect to MS's Relative Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the stand-alone unlevered after-tax free cash flows that AMD and Xilinx were forecasted to generate during the fourth quarter of calendar year 2020 through calendar year 2031 in the case of AMD, and during the second-half of fiscal year 2021 through fiscal year

2032 in the case of Xilinx, and all underlying line items; (ii) the terminal values for Xilinx and AMD; (iii) MS's basis for using terminal EBITDA multiples ranging from 11.0x to 15.0x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.3% to 10.3% and 6.8% to 7.8%; and (v) net debt as used in the analysis.

39. With respect to MS's Precedent Premia Analysis, the Registration Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

40. With respect to MS's Relative Equity Research Analysists' Future Price Targets analysis, the Registration Statement fails to disclose: (i) the price targets used in the analysis; and (ii) the sources thereof.

41. With respect to BofA's Selected Publicly Traded Companies Analyses, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.

42. With respect to BofA's Selected Precedent Transactions Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

43. With respect to BofA's Discounted Cash Flow Analysis of Xilinx, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Xilinx was forecasted to generate during Xilinx's third and fourth quarters of fiscal year 2021 and fiscal years 2022 through fiscal year 2032 and all underlying line items; (ii) the terminal values for the Company; (iii) BofA's basis for using perpetuity growth rates of 2.75% to 3.25%; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 6.5% to 8.5%.

44. With respect to BofA's analysis of price targets, the Registration Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

45. With respect to BofA's Discounted Cash Flow Analysis of AMD, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that AMD was forecasted to generate during AMD's fourth quarter of fiscal year 2020 and fiscal years 2021 through 2031 and all underlying line items; (ii) the terminal values used in the analysis; (iii) BofA's basis for using perpetuity growth rates of 3.50% to 4.00%; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.50% to 10.50%.

46. With respect to BofA's analysis of price targets, the Registration Statement fails to disclose: (i) the price targets observed in the analysis; (ii) the sources thereof; and (iii) the individual inputs and assumptions underlying the discount rate of 9.5%.

47. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48. Third, the Registration Statement fails to disclose the circumstances under which "up to an additional $40 million" will be paid to MS, and whether defendants intend to pay such fee to MS.

49. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50. The omission of the above-referenced material information renders the Registration Statement false and misleading.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Xilinx

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Xilinx is liable as the issuer of these statements.

54.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

55.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

57.     The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

9

58. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and AMD

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants and AMD acted as controlling persons of Xilinx within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Xilinx and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62. Each of the Individual Defendants and AMD was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

64. AMD also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

65. By virtue of the foregoing, the Individual Defendants and AMD violated Section 20(a) of the 1934 Act.

66. As set forth above, the Individual Defendants and AMD had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

11

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  December 15, 2020	**RIGRODSKY & LONG, P.A.**

By:  */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*